United States District Court
Southern District of Texas
**ENTERED**
October 31, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GOOD SPORTSMAN MARKETING, LLC, | § § § § | |
| *Plaintiffs*, | § | |
| v. | § § | CIVIL ACTION NO. 4:23-CV-2519 |
| NINGBO TINSEN INT'L TRADE COMPANY, LTD, | § § § | |
| *Defendants*. | § | |

## FINAL DEFAULT JUDGMENT

On this day, the Court considered Plaintiff, Good Sportsman Marketing's ("Plaintiff," or "GSM") Motion for Default Judgment and Permanent Injunction ("Motion") against Defendant, Ningbo Tinsen International Trade Company, Ltd., ("Defendant," or "Ningbo"), the accompanying Supporting Brief thereof, the evidence, the pleadings on file, and the relevant authorities. (Doc. No. 20). Defendant did not answer the Original Complaint or file any responsive pleadings or briefs. The Court concludes that GSM has established that it is entitled to the requested relief under 15 U.S.C. § 1125(a)(1)(A) of the Lanham Act, and **GRANTS** Plaintiff's Motion for Default Judgment and Permanent Injunction.

### I. Background

GSM is a manufacturer of sporting goods in North America. (Doc. No. 20 at 2). At issue in this case is a certain electronic, hearing-protective earmuff design developed and manufactured for hunters under GSM's Walker Razor brand. (*Id.*). GSM alleges that their design is sufficiently unique, distinctive, and nonfunctional, thus supporting a trade dress and trademark protections. (*Id.* at 3). GSM filed its Original Complaint against Defendant alleging multiple violations of the Lanham Act, copyright, trademark, and trade dress violations, common law unfair competition practices and trade dress violations, common law unjust enrichment, and misappropriation claims. (Doc. No. 1 at 11–27).

Specifically, GSM points to electronic, hunting earmuffs produced and sold by Defendant on Amazon's online marketplace that are virtually identical to the Walker Razor design earmuffs.[1] GSM alleges that the manufacture, advertising, sale, and distribution of this infringing design likely causes confusion or deceives potential consumers regarding the source of the Defendant's products and its affiliation with GSM. (Doc. No. 20 at 8). On this basis, GSM seeks a permanent injunction against Defendant's production, sale, offer to sell, advertising, and distribution of the infringing earmuffs. (*Id.*).

After GSM's first attempts to serve Defendant were unsuccessful, GSM moved for alternative service, which this Court granted. (Doc. No. 14). Due to the trademark allegations contained in the Complaint, the Court permitted GSM to effectuate service of process on Defendant by email to its current United States trademark counsel for Defendant at all of his known email addresses. GSM properly served Defendant through this alternative process. (Doc. No. 15). Despite this service of process, Defendant did not file an answer or any responsive pleading at any point during the pendency of this suit. GSM then requested and obtained a clerk's entry of default. (Doc. No. 19). Following service of the clerk's entry of default, GSM filed its request for an entry of default judgment against Defendant and a permanent injunction. (Doc. No. 20).

## II. Legal Standards

### A. Default Judgment

A motion for default judgment requires the court to determine: (1) if a default judgment is procedurally appropriate; (2) if the plaintiff has presented a colorable claim; and (3) how to calculate damages or equitable relief. *Vela v. M&G USA Corp.*, 2020 WL 421188, at *1 (S.D. Tex. Jan. 27, 2020). The Court must consider relevant factors, including: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the

---

[1] For side-by-side images of the infringing design, a non-infringing design, and the Walker Razor design, see Doc. No. 1 at 13, 16.

2

harshness of the default judgment based on the circumstances; and (6) whether the court would think itself obliged to set aside the default on the [defaulting party's] motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

A default judgment "must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings." *Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Well-pleaded factual allegations are assumed to be true, except regarding damages. *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Judgments by default are a drastic remedy and are disfavored by the courts. *Charlton L. Davis & Co., P. C. v. Fedder Data Ctr., Inc.*, 556 F.2d 308, 309 (5th Cir. 1977); *see also Lindsey*, 161 F.3d at 893.

### III. Analysis

For GSM to receive a default judgment and permanent injunction, it must plead a substantively meritorious claim, show that the *Lindsey* factors support the entry of default judgment, and show that the requested relief is proper. The Court finds that each of these requirements has been met.

#### A. GSM has pled a substantively meritorious claim under the Lanham Act.

"Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010). The purpose of trade dress protection, like trademark protection, is to "secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing products." *Id.* To establish trade-dress infringement under § 43 of the Lanham Act for a trademarked product, a plaintiff must demonstrate that the trade dress is non-functional, and that the defendant's trade dress creates a likelihood of confusion with the plaintiff's. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769–70 (1992).

GSM's Original Complaint alleges that Defendant's product imitates GSM's trade dress such that it causes confusion or mistakes among customers about the ownership or affiliation of the two

3

products. (Doc. No. 1 at 18). The aspects of GSM's product that are infringed are pled to be distinctive and non-functional designs that it relied on extensively to promote the product throughout the United States. The distinctive and non-functional nature of the trade dress features are reinforced by the existence of a non-infringing earmuff that Defendant sells alongside the infringing design. (*Id.* at 16). In the pleadings, GSM provided pictures of its Walker Razor earmuffs and Defendant's infringing product. (*Id.*). Based on the pleadings, the Court finds that GSM has successfully pled that the trade dress of the Walker Razor earmuff product was infringed by Defendant's earmuff product. Further, it finds that the aspects infringed were distinctive and non-functional, and that the infringement is likely to cause confusion.

### B. GSM has shown that the *Lindsey* Factors weigh in favor of default judgment.

As a matter of longstanding Fifth Circuit law, default judgments are generally disfavored. *See Sun Bank v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the Federal Rules and resorted by courts only in extreme situations."). When Courts are assessing whether a default judgment is appropriate, the necessary factors to consider are "whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds of default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion. *Lindsey*, 161 F.3d at 893 (citing 10 Charles A. Wright et al., FEDERAL PRACTICE & PROCEDURE § 2685, at 402 (2d ed. 1983). The Court finds that each of these considerations weigh in favor of default judgment in this case.

First, there seems to be no issues of material fact at issue. GSM's pleadings provided photos of its protected product and Defendant's allegedly infringing product—they appear as virtually identical. As Defendant never appeared or responded to the Original Complaint, the well-pled allegations are deemed admitted against Defendant. *See Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations

of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). This factor weighs in favor of the default judgment.

Second, there does not seem to be any threat of substantial prejudice to the Defendant. GSM alleges reputational and financial harm due to the actions of Defendant that would continue if not resolved in this proceeding. Defendant obviously does not point the Court to any signs of prejudice, and the Court does not recognize any either. This factor weighs in favor of default judgment.

Third, the grounds for default are well established by Defendants failure to "plead or otherwise defend" against GSM's claims, despite being properly served. Fed. R. Civ. Pro. 55(a). Further, none of the typical exceptions to default apply, reflected in the Clerk's entry of default. This factor weighs in favor of default judgment.

Fourth, the question of good faith mistake or excusable neglect is slightly more difficult. Defendant is a Chinese company whose only U.S. based contact seems to be the attorney listed on its trademark office filings, a California attorney named Wei Gu. The requisite documents have been mailed first class to the company's Chinese address and sent to U.S. counsel via numerous listed—and recently updated—emails. (Doc. No. 15 at 2). The emails to which service was made were emails that Mr. Gu had provided to the U.S. Patent and Trademark Office only weeks before service in this case. Doc. No 12-3). Still, the there is no evidence that Defendant has *actual* notice of the suit. Nevertheless, the Court permitted alternative service of process in its prior order, so the service is deemed legally sound. Thus, the Court finds that this factor is neutral.

Fifth, the requested permanent injunction is not harsh under the circumstances. If Defendant's product is infringing the trade dress of GSM, enjoining that conduct is among the least harsh remedies that GSM could pursue. The Court is not granting—and GSM does not ask for—monetary damages for the infringement. Such relief on a default judgment could be seen as harsh depending on the damages model. Here, however, there is no monetary relief. GSM asks for an injunction that would prevent Defendant from continuing to violate or profit from prior violations of GSM's trade dress. This equitable

relief seems the bare minimum to remedy GSM's injuries. As such, the Court does not deem this injunction request harsh under the circumstances. This factor weighs in favor of the default judgment.

Sixth, and finally, absent a compelling reason the Court does not find itself likely to set aside the default upon Defendant's motion. Defendant has failed to answer or appear at any time during the pendency of this suit—now approaching a year-and-a-half—despite being served numerous ways over the course of several months. Further, based on the Defendant's lack of appearance or response, the likelihood of the Defendant making such a motion seems remarkably low. Thus, this factor also weighs in favor of default judgment. Weighing each of the *Lindsey* factors together, the Court finds that this inquiry weighs heavily in favor of default judgment being appropriate.

### C. GSM satisfies the elements for a permanent injunction.

GSM's requested relief is a permanent injunction preventing Defendants from continuing to infringe its Walker Razor design earmuffs. Section 34(a) of the Lanham Act authorizes courts to "grant injunctions . . . to prevent a violation under subsection (a), (c), or (d) of Section 43 of the Lanham Act." 15 U.S.C. 1116(a). A party seeking a permanent injunction must establish "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 639–41 (N.D. Tex. 2009) (applying the eBay factors to a Lanham Act violation); *Flowserve Corp. v. Hallmark Pump Co., Inc.*, 2011 WL 1527951, at *9 (S.D. Tex. Apr. 20, 2011).

GSM satisfies the first requirement because "[a] plaintiff seeking an injunction [under subsection (a), (c), or (d) of Section 1125] shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection . . . ." 15 U.S.C. § 1116(a). Thus, as the default judgment establishes liability for infringement under § 1125, irreparable harm is statutorily presumed.

6

Second, courts have often found that ongoing infringement is sufficient to show that remedies at law are inadequate. *eBay*, 547 U.S. at 392; *ZeniMax Media Inc. v. Oculus VR LLC*, 2018 WL 4078586, at *4 (N.D. Tex. June 27, 2018). Without injunctive relief, GSM will have to continually seek damages based on the confusion and brand dilution caused by Defendant's infringing product. The Court sees this as a quintessential example of when monetary relief alone is insufficient to resolve the injury caused by the trade dress infringement.

Third, the balance of hardships favors GSM. A party is not harmed merely by being required to comply with federal trademark and trade dress laws. *See Chevron Intellectual Prop., LLC v. Allen*, 2009 WL 2596610, *3 (N.D. Tex. Aug. 24, 2009). Any hardship resulting from this injunction on Defendant can also be directly traced to Defendant's complete failure to appear or defend itself during the pendency of the suit. Thus, the Court finds no undue hardship would be caused by a permanent injunction.

Fourth, and finally, "public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Clearline Tech. Ltd, v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 715 (S.D. Tex. 2013). Thus, this factor favors the injunction. As such, the Court finds that GSM's request for a permanent injunction is meritorious, and therefore **GRANTS** the requested injunction.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** GSM's Motion for Default Judgment and Permanent Injunction. (Doc. No. 20).

SIGNED at Houston, Texas this 31st day of October, 2024.

Andrew S. Hanen
United States District Court Judge